IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| ANGELA RICE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | CIVIL ACTION FILE NO.: _____ |
| HARRY B. JAMES, III, INDIVIDUALLY | : | |
| AND IN HIS OFFICIAL CAPACITY AS | : | **JURY TRIAL DEMANDED** |
| JUDGE OF RICHMOND COUNTY | : | |
| PROBATE COURT; AUGUSTA, | : | |
| GEORGIA | : | |
| | : | |
| Defendants. | : | |

## **COMPLAINT FOR DAMAGES**

COMES NOW, Angela Rice, Plaintiff in the above captioned action, and files this her Complaint for Damages, against the named Defendants and respectfully shows this Court as follows:

## **PARTIES**

1.      Plaintiff is a Caucasian female who resides in Augusta, Richmond County, Georgia. Plaintiff is a citizen of the State of Georgia and the United States of America.

2.      At all times relevant, Plaintiff was an employee of Augusta, Georgia via its Richmond County Probate Court.

3.      The Honorable Harry B. James, III (hereinafter, "Judge James") is an African-American male.  At all times relevant, Judge James was the duly elected constitutional officer for the Richmond County Probate Court. At all times pertinent to this action, Judge James was acting under the color of state law.   Plaintiff's claims against Judge James are asserted against him in his

official and individual capacities.  Judge James may be served at 735 James Brown Boulevard, Suite 1000, Augusta, Georgia  30901.

4.      Defendant Augusta, Georgia is a consolidated government and political subdivision of the State of Georgia.  Defendant Augusta, Georgia is a municipality and body politic of the State of Georgia capable of suing and being sued.  Defendant employed Plaintiff and may be served through its Mayor, Hardie Davis, Jr.  Mayor Davis can be served a copy of the Complaint and Summons at his office located at 535 Telfair Street, Suite 200, Augusta, Georgia  30901.

## JURISDICTION

5.      This is a cause of action arising out of Plaintiff's former employment with Defendants and is based on claims of (a) racial discrimination, harassment, hostile work environment, and retaliation in violation Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e-5), under 42 U.S.C. § 1981; and for state law causes of action.

6.      This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, and 42 U.S.C. § 1981.

7.      This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.  This Court also has supplemental jurisdiction over Plaintiff's corresponding state law claims as they arise out of the same core of operative facts as the federal claims, and jurisdiction over those claims  is vested in this Court under 28 U.S.C. § 1367(a).

8.      Plaintiff has exhausted her administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about November 13, 2013[1] and May 20, 2014[2].  The EEOC issued to Plaintiff her Dismissal and Notice of Rights letter from the EEOC dated December 30, 2016 (received by Plaintiff by mail thereafter)

---

[1] EEOC Charge No. 410-2013-05967 was subsequently amended on May 20, 2014.
[2] EEOC Charge No. 410-2014-01850

and has timely filed this action within ninety (90) days of receipt of the notice of right to sue.  *See Exhibit A, attached hereto.*

9.      Plaintiff contends that she was demoted, harassed, and ultimately terminated by Judge James because of her race (Caucasian).  Plaintiff further asserts that Judge James retaliated against her for having complained about such discrimination, created a hostile work environment, caused her to suffer major depression and terminated her employment for discriminatory and retaliatory reasons.

10.     Based upon the aforesaid facts, the Defendants are subject to the personal jurisdiction of this Court.

## **VENUE**

11.     All of the actions complained of herein occurred in Augusta, Richmond County, Georgia. Wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

12.     Venue is proper in this judicial district because Plaintiff was employed by Augusta, Georgia in the Richmond County Probate Court.   The decisions adverse to Plaintiff's employment that are the subject of this civil action were made in this judicial district.

13.     At all times relevant to this action, Judge James was the Chief Judge of the Richmond County Probate Court and he resides in Augusta, Richmond County, Georgia, within the Southern District of Georgia. At all relevant times, Judge James acted under color of state law, and within the scope of his employment.

14.     Augusta, Georgia is located within the Southern District of Georgia.

15.     Venue in this action is proper in the Southern District of Georgia, Augusta Division.

## STATEMENT OF FACTS

16.     Plaintiff is a Caucasian female.  At all times relevant to this suit, Plaintiff was employed in the Probate Court of Richmond County.

17.     Plaintiff was employed in the Probate Court of Richmond County from September 1998 until her termination on March 17, 2014.

18.     During her nearly 16 year tenure, Plaintiff has worked her way through the ranks from an Administrative Assistant up to the position of Director of Probate Court.

19.     Judge James officially became the duly elected Chief Judge of the Probate Court of Richmond County on January 1, 2013.

20.     After he took office, Judge James began treating Plaintiff and other Caucasian employees differently from other similarly situated African-American employees.

21.     Within his first three months as Probate Court Judge, Judge James terminated one Caucasian female employee and another Caucasian female was constructively discharged after repeated belittling, harassment, berating, and mistreatment by Judge James and other staff members.   Judge James filled both vacancies with African-American personnel.

22.     Shortly after he took office, Judge James took action designed to demote Plaintiff by reassigning Plaintiff's supervisory job duties and responsibilities to an African-American female, Felecia Bray ("Ms. Bray").  Specifically, Judge James placed Ms. Bray in charge of the Probate Court staff, which had been a duty that was Plaintiff's responsibility prior to.

23.     On July 31, 2013, Judge James announced that he made "structural changes" to the hierarchy of the Probate Court.

24.     Supposedly, Judge James made the structural changes to realign the Richmond County Probate Court with other probate courts throughout the State of Georgia. In fact, he utilized the

subterfuge of "structural changes" to implement his strongly-held racist beliefs into an office of public trust.

25.     To that end, Judge James eliminated two positions and created two.  The newly created positions were Chief Clerk and Deputy Chief Clerk.

26.     The positions eliminated by the structural changes were Director of Probate Court and Operations Manager.

27.     Plaintiff was the Director of Probate Court and her position was eliminated by Judge James, with a resultant loss of pay.  Ms. Bray was the Operations Manager and her position was eliminated by Judge James, with a resultant increase in pay.

28.     Without so much as advertising the position either internally or externally, on July 31, 2013, Judge James appointed Ms. Bray as the Chief Clerk of Probate Court.  As Chief Clerk, Ms. Bray's supervisory authority over the other Probate Court staff was solidified.

29.     As a result of the promotion, Ms. Bray received a pay increase of nearly $10,000.00/year.

30.     As Chief Clerk, Ms. Bray was authorized by Judge James to select the person she wanted to serve as the Deputy Chief Clerk.  Judge James encouraged all staff to apply for the Deputy Chief Clerk position, which also was not an advertised position.

31.     During the same meeting, Judge James told Plaintiff her position as Director of Probate Court had been eliminated and that Plaintiff had been demoted to an Administrative Assistant/Clerk II position.

32.     The demotion from Director of Probate Court to Administrative Assistant/Clerk II caused Plaintiff to suffer a substantial loss in annual pay, nearly $15,000.00 per year.

33.     Plaintiff's involuntary demotion resulted in a 9 level salary grade reduction and a greater than 15% salary reduction in direct contravention of policies approved by Defendant Augusta, Georgia.

34.     Prior to the change in her title and responsibilities, Plaintiff's job duties and responsibilities as Director of Probate Court were nearly identical to the roles and responsibilities of Chief Clerk. The primary difference between the two positions was the title and the race of the person Judge James wanted in that position.

35.     At the time of her demotion to Administrative Assistant/Clerk II, Plaintiff had more years of experience supervising the Probate Court staff and she was more credentialed than the younger, Ms. Bray.

36.     Prior to her demotion, Plaintiff had not been disciplined by Judge James for poor work performance.  The demotion from Judge James came without warning or an opportunity to contest or appeal the decision made by Judge James.

37.     At the time of her demotion to Administrative Assistant/Clerk II, Plaintiff had an Associate's Degree in Business Technology; a Certification of Completion of an accredited paralegal course; GBI and FBI training specific to issuance of concealed weapon permits; a certificate in local government management through the University of Georgia; and she was a Certified Probate Court Clerk (one of only two for Richmond County).

38.     On August 1, 2013, Plaintiff and Judge James met to discuss her demotion and his assessment of her work performance.  Judge James assured Plaintiff she had nothing to fear and that he was satisfied with her work performance.  During this conversation, Judge James told Plaintiff he was aware of the "black and white clicks" in the office but that he did not believe things would change in the current state.

39.     Although confused by his comment, Plaintiff did not believe at that time that Judge James would knowingly and intentionally create a hostile work environment for the purpose of further driving a wedge between the racial composition of his staff.

40.     On August 3, 2013, Plaintiff moved her belongings out of her old office.

41.     On August 5, 2013, Plaintiff and another Caucasian female, Lacey Grantham, submitted their resumes and a letter of interest for the Deputy Chief Clerk position.

42.     As the most senior person on staff, and with her numerous credentials, Plaintiff was the most qualified person for the Deputy Chief Clerk position.

43.     On August 5, 2013, Plaintiff was advised she did not get the Deputy Chief Clerk position and that Ms. Bray selected Joy Daniels ("Ms. Daniels"), an African-American female, to serve in that capacity.

44.     By letter dated August 5, 2013, Ms. Bray advised Plaintiff that although Plaintiff's "work has been first rate", it was "[management's] decision to promote another clerk, who [was] equally qualified … to fill the position [Plaintiff] wanted."

45.     As a result of the promotion, Ms. Daniels received a pay increase of nearly $12,000.00/year.

46.     In less than three months, Judge James awarded Ms. Daniels, a government employee, salary increases that raised her annual compensation from $34,499.94 to $48,000.00.

47.     At the time of her being passed over for the Deputy Chief Clerk position, Plaintiff had more years of experience, more seniority, more supervisory experience, and was more credentialed than the younger, Ms. Daniels.

48.     Prior to her promotion to the Deputy Chief Clerk position, Ms. Daniels was an Administrative Assistant II.

49.    Judge James executed the RPA forms for Ms. Daniels, Ms. Bray, and Plaintiff on the same date, August 7, 2013.

50.    Judge James twice overlooked Plaintiff for two positions for which she was clearly qualified.

51.    Plaintiff was not given an opportunity to apply for the Chief Clerk position, but she did apply for the Deputy Chief position. Based on her education and years of experience performing the job duties of a head Clerk, Plaintiff was the most qualified candidate in the Probate Court, at that time. However, she was not selected for either of the two positions.

52.    On November 13, 2013, Plaintiff timely filed a Charge of Discrimination with the EEOC (Charge No. 410-2013-05967), asserting non-selection by Judge James. *See Exhibit B, attached hereto.*

53.    After Plaintiff filed her EEOC Charge, Judge James's mistreatment of Plaintiff only grew more hostile.

54.    Judge James took away Plaintiff's principle job duties and reassigned those duties to African American employees. In addition, he significantly diminished Plaintiff's substantive job responsibilities.

55.    At one point during the structural realignment of the office, Judge James and Ms. Bray intentionally positioned the workspaces for all Caucasian employees to be in the rear of the building while African-American employees were in the front and closer to Judge James.

56.    Although Judge James announced Plaintiff's demotion on July 31, 2013, Plaintiff's wages were not immediately affected.

57.     On July 31, 2013, Judge James did not tell Plaintiff by how much her wages would be decreased, nor did he tell her when the wage change would take effect.  Instead, Judge James told Plaintiff he was thinking about reducing her annual salary to "no less than" $50,000.00/year.

58.     Several weeks went by and Plaintiff saw no change in her payroll.  Nevertheless, Plaintiff continued to inquire of Judge James and Ms. Bray about any forthcoming changes to her compensation.

59.     Defendants were notified of Plaintiffs complaint to the EEOC on or before **September 9, 2013**.

60.     On or about **September 12, 2013**, Judge James spoke with the Human Resources Department for Augusta, Georgia to inquire if Plaintiff's demotion could be "retroactively" applied and backdated to August 2013.  Judge James wanted to back Plaintiff's salary decrease so he could offset the salary increases he'd given to Plaintiff's African-Americans co-workers who also wanted retroactive application of their salary increases.

61.     Overall, the demotion – following receipt by Judge James of notice of the Plaintiff's EEOC Charge of Discrimination – resulted in Plaintiff's wages being decreased by approximately $15,000.00/year.

62.     On **September 16, 2013**, only one week after Defendants received notice of Plaintiff's EEOC Charge of Discrimination, Plaintiff was called into the office of Judge James and verbally reprimanded for more than half an hour.

63.     A week prior to the September 16th reprimand, Plaintiff submitted a written request to the Human Resources Department to obtain a copy of her entire personnel file.  Plaintiff also made an open records request to Human Resources to obtain public information related to substantial salary increases recently given by Judge James to several of Plaintiff's African-American co-workers.

64.     Based on information and belief, Judge James was also aware of Plaintiff's open records request at the time of the September 16th reprimand.

65.     During this meeting, Judge James told Plaintiff, "The old click was Sarah (Caucasian female), Lacey (Caucasian female), and [Plaintiff] and that [he] wasn't going to have it."   He further stated, "I fired Shelly, Sarah quit, and Gerri retired."   Each of those individuals were also Caucasian females.

66.     Judge James continued to accuse Plaintiff of improperly "putting anything in front of" the former Probate Court Judge, Isaac Jolles (deceased) whom Judge James said "didn't do anything but sat up in here and slept."   Judge James then told Plaintiff she "wasn't about to put anything in front of him to sign."

67.     Judge James made it known that he did not trust Plaintiff and that he only trusted Felecia Bray (African-American), Joy Daniels (African-American), and Carrie Braxton (African-American).

68.     Judge James said he was reprimanding Plaintiff for calling the Information Technology Department to report an issue with her computer that prevented her from accessing Judge James's court calendar.

69.     When Plaintiff attempted to defend herself against the vicious attacks of Judge James, he sarcastically replied to her "Yeah, nothing makes me madder than to be accused of something not true", which indicated his awareness of Plaintiff's EEOC Charge against him.

70.     Despite his multiple verbal declarations to her otherwise, Judge James drafted a memorandum dated **September 23, 2013**  to Tameka Allen (Human Resources Department) that explained Plaintiff's position as Director of Probate Court was terminated due to her "inability to supervise other staff."   Not only was this wholly contrary to what Judge James had, on several

occasions, told Plaintiff and other staff was the reason for her demotion, this was an intentional negative falsehood manufactured by Judge James after he learned of Plaintiff's EEOC Charge.

71.     Furthermore, in the September 23, 2013 letter, Judge James admitted that he "promoted Felecia Bray to Chief Clerk which necessitated Ms. Rice demotion to a Clerk position with loss of pay.   Joy Daniels was promoted to the position of Deputy Clerk which is another authorized position in a court setting.   Ms. Rice, Mrs. Bray and Mrs. Daniels salaries were adjusted to reflect their new positions and increased or decreased responsibilities."

72.     Nearly two months after Judge James told Plaintiff of her demotion to Administrative Assistant/Law Clerk II, Plaintiff was contacted by Betty Griffin (Payroll Department) on **September 30, 2013**.   Ms. Griffin alerted Plaintiff to the fact that Plaintiff's October 4, 2013 paycheck would be deducted in lump sum by $1,153.00 to offset the difference between Plaintiff's former salary as a Director and Plaintiff's new salary as an Administrative Assistant/Law Clerk.

73.     From August 1, 2013 through September 30, 2013, Defendant Augusta, Georgia continued to pay Plaintiff at her same rate of pay for the abolished Director position.   During this nearly two month period of time, Judge James never told Plaintiff what her salary would be, following the demotion, even though he executed an RPA on August 7, 2013 requesting that Plaintiff's salary be decreased by approximately $15,000.00 and he engaged in multiple communications with various Human Resources personnel regarding his requested change to Plaintiff's position and salary and its effective date.

74.     On **November 15, 2013**, Plaintiff was again called into the office of Judge James where Ms. Bray and Ms. Braxton were both present.   Judge James stated he called Plaintiff's office telephone line and that her voicemail had not been changed to indicate she was no longer the

Director of Probate Court.  Plaintiff advised that Ms. Bray had recently made Plaintiff aware of the oversight and that Plaintiff had already changed the voicemail.

75.    For the sole purpose of willfully harassing Plaintiff, Judge James made a point of mocking and humiliating Plaintiff, in front of Bray and Braxton, by telling Plaintiff, "Oh, you're going to be a Director alright….the Director of Traffic"!

76.    At the expense and humiliation of Plaintiff, Judge James referred to Plaintiff as the "Director of Traffic" two more times during the November 15, 2013 meeting.  On each occasion, Ms. Bray and Ms. Braxton joined the mean spirited acts of Judge James by laughing at Plaintiff's obvious embarrassment.

77.    It was during this meeting that Plaintiff learned her job duties were changing yet again.  This time, Plaintiff was relieved of her duty to process weapon permit applications and marriage license applications, and reassigned to only handle estate petitions.  Plaintiff was also told her office would be moved from the rear of the office toward the front.

78.    Following her demotion and filing of an EEOC Charge, Plaintiff's workspace and location was moved three times in less than 6 months.

79.    Plaintiff's job duties and responsibilities were also constantly altered by Judge James and Ms. Bray, without warning or explanation.  When Plaintiff failed to complete a task about which she had no knowledge, Judge James and Ms. Bray would reprimand Plaintiff in an effort to "document her file" with alleged inaccuracies and mistakes.

80.    On **January 14, 2014**, Judge James called Plaintiff into his office for yet another meeting.  This time, Plaintiff was given a letter of reprimand.  Ms. Bray and Ms. Daniels were present during this meeting.

81.     In her nearly 16 years of dedicated, faithful service to the Probate Court, Plaintiff had never received a letter of reprimand.

82.     The January 24th reprimand disciplined Plaintiff for not "being a team player", for making improper gender references in court pleadings, and for not having a "pleasant demeanor" in the workplace.

83.     During this reprimand, Judge James specifically told Plaintiff she "was not a team player" because Plaintiff declined to participate in a Christmas gift exchange between staff.

84.     The letter of reprimand specifically noticed Plaintiff that "[f]uture infractions may result in suspension without pay."

85.     On **January 15, 2014**, Plaintiff was again asked to meet with Judge James.  This meeting pertained to Plaintiff's annual performance review, which was back dated to November 26, 2013. During this meeting Judge James told Plaintiff several times that she should "just quit" because no one liked her.

86.     On **March 4, 2014**, Judge James called what Plaintiff believed would be a routine staff meeting.

87.     During the meeting, **Judge James advised the staff that "Angela" filed an EEOC compliant based on race and age!**  He then said the complaint was against him but that the staff was not to retaliate against Plaintiff for filing the complaint because Plaintiff had a right to believe she was treated differently on the basis of her race.

**88.     Judge James then proceeded to read aloud the entire first page of Plaintiff's EEOC Charge!**

89.     There was no other purpose for Judge James to read aloud Plaintiff's EEOC Charge except to embarrass and publicly ridicule Plaintiff before her peers.

90.    If Judge James truly believed Plaintiff's EEOC Charge was solely directed toward him, there was no need for him make the staff aware of Plaintiff's EEOC Charge by reading same aloud.

91.    If Judge James truly believed Plaintiff's EEOC Charge was solely directed toward him, there was no need for him to direct the staff not to retaliate against Plaintiff.

92.    Judge James knew when he read Plaintiff's EEOC Charge aloud that she identified many of her co-workers in the Charge.

93.    Judge James read Plaintiff's EEOC Charge to the staff because he wanted to alienate Plaintiff from the other staff by making Plaintiff's co-workers fearful of loss of employment if they communicated with Plaintiff.

94.    As Plaintiff sat in silence, humiliated by the acts of her superior, Judge James looked Plaintiff directly in her eyes and said "I don't trust you!", while pointing and vigorously shaking his finger toward Plaintiff.

95.    Judge James told Plaintiff she was prohibited from being in his office and that she could not speak to him without another witness present.

96.    As his final act of humiliation and embarrassment Judge James promised Plaintiff that "change was going to come real soon."

97.    Judge James then announced to the staff that they would no longer have "First Friday" breakfast meetings until such time as his office was "more cohesive and trustworthy."

98.    Following dismissal from the meeting, Judge James asked Lacey Grantham ("Ms. Grantham") to come into his office.  Ms. Bray, Ms. Grantham, and Judge James remained behind closed doors nearly thirty minutes before Ms. Grantham came out.

99.    After that meeting, Ms. Grantham refused to have any further communication with Plaintiff.

100.    On **March 17, 2014**, at 4:45 p.m., just prior to the end of the working day when hundreds of Defendants' employees would be leaving for the day, Judge James contacted a Richmond County Deputy Marshal to escort Plaintiff off the property.

101.    Plaintiff was told her termination was effective immediately and that she should pack her personal belongings and leave with a marshal.

102.    Similar to her demotion 8 ½ months earlier, Plaintiff was terminated without any warning whatsoever from Judge James.

103.    Following the January 1, 2014 letter of reprimand, Plaintiff did not receive any other write ups, warnings, or corrective disciplinary actions from Judge James.

104.    At no time was Plaintiff ever placed on suspension without pay for "any further infractions" as noted in the January 14th letter of reprimand.

105.    Defendants did not provide Plaintiff any details regarding why she was terminated.

106.    Defendants did not advise Plaintiff of what conduct she had engaged that caused the ultimate termination.

107.    On March 19, 2014, Plaintiff had an exit interview with Clay Jolly, Jr. ("Mr. Jolly"). During that interview, Mr. Jolly provided Plaintiff with a copy of an RPA form, dated March 18, 2014, which terminated Plaintiff's employment with a proposed effective date of March 28, 2014. That document was completed by Ms. Bray and approved by Judge James and it improperly identified Plaintiff as ineligible for rehire.

108.    As a result, when Plaintiff submitted applications for positions with Defendant Augusta, Georgia, she noted on the application that she had been terminated and was therefore ineligible for rehire.

109.    In late August 2014, however, in response to an open records request, Plaintiff was provided with an "amended" copy of her RPA termination form which had been edited to reflect Plaintiff that Plaintiff was eligible for rehire.  The amended document had been subsequently signed by Defendants' Human Resources Director at the time and dated March 21, 2014.

110.    As a result of Plaintiff's unlawful termination, and Judge James's intentional and knowingly false improper classification of Plaintiff as an employee ineligible for rehire, Defendant Augusta, Georgia denied Plaintiff's numerous applications for other positions within the local government, for which Plaintiff was qualified.

111.    As a result of Plaintiff's unlawful termination, and Judge James's intentional and knowingly false improper classification of Plaintiff as an employee ineligible for rehire, Plaintiff was unemployed and unable to find other suitable employer for eight months.

112.    As a result of Plaintiff's unlawful termination, and Judge James's intentional and knowingly false improper classification of Plaintiff as an employee ineligible for rehire, Plaintiff was deprived of her health, dental, and vision insurance.

113.    As a result of Plaintiff's unlawful termination, and Judge James's intentional and knowingly false improper classification of Plaintiff as an employee ineligible for rehire, Plaintiff's Retirement and Deferred Compensation plans with Defendant Augusta, Georgia were negatively impacted.

114.    As a result of Judge James' and the staff's harassment of Plaintiff, Plaintiff's unlawful termination, and Judge James's intentional and knowingly false improper classification of Plaintiff as an employee ineligible for rehire, Plaintiff suffered humiliation, and mental and emotional stress and anguish.

115.    Throughout Plaintiff's employment, Judge James exhibited preferential treatment of African-American employees and disparate treatment toward Caucasian employees. For example, pay raises given to African-American employees were substantially higher than raises given Plaintiff and other Caucasian employees, and Judge James overlooked – indeed fostered and encouraged – the hostile work environment despite his admitted knowledge of a racial divide and tension. The differential treatment and/or retaliation includes, without limitation, Plaintiff being disciplined for things her African-American counterparts were not disciplined for, being denied pay increases, and being twice overlooked for the Chief Clerk and Deputy Chief Clerk positions.

116.    Further, Judge James did not discipline African American employees for creating a hostile work environment based on race. Despite Plaintiff's repeated complaints to Judge James, and his admitted knowledge of a racial divide, Judge James did nothing to discipline the steadfast harassment.

117.    Judge James treated Plaintiff differently by routinely disparaging her in the presence of her peers, and subjecting her to his hostility based upon her race.

118.    Additionally, Plaintiff was subjected to retaliation for reporting Judge James's discriminatory practices.

119.    In violating Plaintiff's constitutional rights, Judge James took every opportunity he could to traumatize and humiliate Plaintiff by creating, fostering, and escalating a hostile work environment fueled by his discriminatory practices.

120.    Any after-the-fact alleged non-discriminatory reasons proffered for the termination of Plaintiff are nothing more than pretext for the unlawful and discriminatory practices of an elected official and member of the judiciary.

121.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered the injuries described herein.

## THEORIES OF RECOVERY

### Count I – Racial Discrimination in Violation of Title VII

122.    Plaintiff re-alleges and incorporates by reference into Count I paragraphs 1 – 121, above.

123.    The matters alleged above constitute violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et. Seq., in the nature of race-based discrimination, harassment, hostile work environment, and retaliation.

124.    Plaintiff is a member of a protected Class based on her race:  Caucasian.

125.    Plaintiff was discriminated against and subjected to a hostile work environment based on race in violation of Title VII of the Civil Rights Act.

126.    Plaintiff was discriminated against in the terms and conditions of her employment, including that she was subjected to a demotion, denied pay increases, and overlooked for positions she was more qualified to perform.

127.    Plaintiff complained about the discrimination when she filed her EEOC Charge on November 13, 2013, but Defendants failed to promptly respond to the ongoing discrimination.

128.    After Plaintiff complained, Judge James's discrimination and harassment became more severe.

129.    Plaintiff is entitled to relief under federal law for racial harassment because her harassment was pervasive and severe enough to alter the terms and conditions of her employment.

130.    Plaintiff is entitled to relief under federal law for racial harassment because her harassment by Judge James was stemmed from racial animus.

131.    Plaintiff is also entitled to relief under federal law for retaliation because Plaintiff engaged in protected opposition to race discrimination, she suffered an adverse action subsequent to the protected activity, and a causal link exists between the protected activity and the adverse action.

132.    As a direct and proximate result of the foregoing acts, Plaintiff has suffered lost earnings (past and future), loss of prestige amongst her peers, humiliation and emotional distress, anxiety, and other equitable and compensatory damages.

133.    Because the actions of Defendant James were willful, malicious, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitle to punitive damages.

134.    Defendant James has engaged in discriminatory practices with malice and reckless disregard of Plaintiff's federal protected rights, thereby entitling her to punitive damages pursuant to 42 U.S.C. § 1991.

135.    As a direct and proximate result of the foregoing acts, Plaintiff has suffered lost earnings (past and future), loss of prestige amongst her peers, humiliation and emotional distress, anxiety, and other equitable and compensatory damages.

## Count II – Racial Discrimination in Violation of 42 U.S.C. § 1981

136.    Plaintiff re-alleges and incorporates by reference into Count II paragraphs 1 – 135, above.

137.    Plaintiff's was deprived of her rights because of racial animus.

138.    The acts of discrimination by James were done intentionally.

139.    Judge James' treatment of Plaintiff denied her the full and equal treatment benefit of the laws.

140.    As a direct and proximate result of the foregoing acts, Plaintiff has suffered lost earnings (past and future), loss of prestige amongst her peers, humiliation and emotional distress, anxiety, and other equitable and compensatory damages.

## Count III – Title VII Retaliation (Hostile Work Environment)

141.    Plaintiff re-alleges and incorporates by reference into Count III paragraphs 1 – 140, above.

142.    Plaintiff repeatedly complained about an atmosphere of racial discrimination within the Probate Court.

143.    Judge James went out of his way to make Plaintiff's work environment miserable and took extra measures to subject Plaintiff, because she complained about his discriminatory practices, to increased scrutiny and discipline.

144.    Plaintiff was retaliated against for complaining about the preferential treatment of African-American employees and disparate treatment toward Caucasian employees.  For example, pay raises given to African-American employees were substantially higher than raises given Plaintiff and other Caucasian employees, and Judge James overlooked – indeed fostered and encouraged – the hostile work environment despite his admitted knowledge of a racial divide and tension.  The differential treatment and/or retaliation includes, without limitation, Plaintiff being disciplined for things her African-American counterparts were not disciplined for, being denied pay increases, and being twice overlooked for the Chief Clerk and Deputy Chief Clerk positions.

145.    Judge James treated Plaintiff differently by routinely disparaging her in the presence of her peers, and subjecting her to his hostility based upon her race.  Including, but not limited to, him reading aloud Plaintiff's EEOC Charge during a staff meeting.

146.    In violating Plaintiff's constitutional rights, Judge James took every opportunity he could to traumatize and humiliate Plaintiff by creating, fostering, and escalating a hostile work environment fueled by his discriminatory practices.

147.    Judge James's retaliatory acts deprived Plaintiff of the financial opportunities offered to other Probate Court employees who did not complain about race discrimination.

148.    The retaliatory actions by Judge James constitute materially adverse employment actions.

149.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has suffered lost earnings (past and future), loss of prestige amongst her peers, humiliation and emotional distress, anxiety, and other equitable and compensatory damages.

### Count IV – Title VII Retaliation (Termination of Plaintiff)

150.    Plaintiff re-alleges and incorporates by reference into Count IV paragraphs 1 – 149, above.

151.    Plaintiff repeatedly complained about an atmosphere of racial discrimination within the Probate Court.

152.    Judge James went out of his way to make Plaintiff's work environment miserable and took extra measures to subject Plaintiff, because she complained about his discriminatory practices, to increased scrutiny and discipline.

153.    Plaintiff was retaliated against for filing an EEOC Charge of Discrimination.

154.    On March 17, 2014, Plaintiff was terminated without warning, without any explanation of the basis for her termination, and without the opportunity to appeal the termination.

155.    The RPA termination documents completed by Ms. Bray and approved by Judge James improperly identified Plaintiff as ineligible for rehire.

156.    As a result, when Plaintiff submitted applications for positions with Defendant Augusta, Georgia, she noted on the application that she had been terminated and was therefore ineligible for rehire.

157.    In late August 2014, however, in response to an open records request, Plaintiff was provided with an "amended" copy of her RPA termination form which had been edited to reflect Plaintiff that Plaintiff was eligible for rehire.  The amended document had been subsequently signed by Defendants' Human Resources Director at the time and dated March 21, 2014.

158.    As a result of Plaintiff's unlawful termination, and Judge James's intentional and knowingly false improper classification of Plaintiff as an employee ineligible for rehire, Defendant Augusta, Georgia denied Plaintiff's numerous applications for other positions within the local government, for which Plaintiff was qualified.

159.    As a result of Plaintiff's unlawful termination, and Judge James's intentional and knowingly false improper classification of Plaintiff as an employee ineligible for rehire, Plaintiff was unemployed and unable to find other suitable employer for eight months.

160.    As a result of Plaintiff's unlawful termination, and Judge James's intentional and knowingly false improper classification of Plaintiff as an employee ineligible for rehire, Plaintiff was deprived of her health, dental, and vision insurance.

161.    As a result of Plaintiff's unlawful termination, and Judge James's intentional and knowingly false improper classification of Plaintiff as an employee ineligible for rehire, Plaintiff's Retirement and Deferred Compensation plans with Defendant Augusta, Georgia were negatively impacted.

162.    As a result of Judge James' and the staff's harassment of Plaintiff, Plaintiff's unlawful termination, and Judge James's intentional and knowingly false improper classification of Plaintiff as an employee ineligible for rehire, Plaintiff suffered humiliation, and mental and emotional stress and anguish.

163.    Judge James's retaliatory acts deprived Plaintiff of the financial opportunities offered to other Probate Court employees who did not complain about race discrimination.

164.    The retaliatory actions by Judge James constitute materially adverse employment actions.

165.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has suffered lost earnings (past and future), loss of prestige amongst her peers, humiliation and emotional distress, anxiety, and other equitable and compensatory damages.

### Count V – Title VII Retaliation for All Discriminatory Conduct
### After Plaintiff Filed EEOC Charge

166.    Plaintiff re-alleges and incorporates by reference into Count V paragraphs 1 – 165, above.

167.    Plaintiff repeatedly complained about an atmosphere of racial discrimination within the Probate Court.

168.    Judge James went out of his way to make Plaintiff's work environment miserable and took extra measures to subject Plaintiff, because she complained about his discriminatory practices, to increased scrutiny and discipline.

169.    Plaintiff was retaliated against for filing an EEOC Charge of Discrimination.

170.    Plaintiff was subjected to a hostile working environment that became even more hostile, and practicable unbearable, after Plaintiff filed her EEOC Charge of Discrimination.

171.    Judge James read Plaintiff's EEOC Charge to her co-workers for the sole purpose of isolating Plaintiff from her co-workers and subjecting Plaintiff to such intense hostile working conditions that Plaintiff would succumb and resign from her employment, which he had suggested she do on several occasions.

172.    Plaintiff was terminated on March 17, 2014 without warning, explanation, or an opportunity to appeal the termination.

173.    Upon her termination, Judge James intentionally and knowingly false improperly classified Plaintiff as an employee ineligible for rehire.

174.    Judge James's retaliatory acts deprived Plaintiff of the financial opportunities offered to other Probate Court employees who did not complain about race discrimination.

175.    The retaliatory actions by Judge James constitute materially adverse employment actions.

176.    As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has suffered lost earnings (past and future), loss of prestige amongst her peers, humiliation and emotional distress, anxiety, and other equitable and compensatory damages.

### Count VI – Pendent State Law Claims

177.    Plaintiff re-alleges and incorporates by reference into Count VI paragraphs 1-176, above.

178.    Judge James intended to cause Plaintiff severe emotional distress.

179.    The conduct of Judge James was extreme, outrageous, and beyond bounds of moral decency, especially for someone sworn to uphold the law.

180.    The conduct of Judge James was so outrageous that no reasonable person would be expected to endure his ubiquitous harassment.

181.    As a direct and proximate result of Judge James's conduct, Plaintiff suffered emotional distress and was damaged.

Wherefore, for the foregoing reasons, Plaintiff respectfully requests that this Court provide the following equitable and monetary relief:

### Relief Requested

1.    A declaratory judgment that the policies, practices, acts and omissions complained of herein violated Plaintiff's rights;

2.    Entry of an Order requiring Defendants to eliminate and remediate discrimination, retaliation, and harassment in the workplace.

3.    Award Plaintiff back pay, lost future earnings, and reimbursement for lost income and lost fringe benefits;

4.    Award prejudgment interest;

5.      Compensatory damages in an amount to be determined by the enlightened conscience of the jury against Defendants, jointly and severally;

6.      Liquidated damages in an amount to be determined by the enlightened conscience of the jury against Defendants, jointly and severally

7.      Punitive damages against Defendant James in his individual capacity in an amount to be determined by the enlightened conscience of the jury;

8.      Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

9.      Award costs of this action to Plaintiff; and

10.     Such further relief as the Court may deem just and proper.

Respectfully submitted, this 6th day of April, 2017.

WATSON SPENCE LLP
Attorneys for Plaintiff


By:     /s/Alfreda L. Sheppard
        Georgia State Bar No.: 525106
        /s/Louis E. Hatcher
        Louis E. Hatcher
        Georgia Bar No.:  337342
        320 Residence Avenue
        Post Office Box 2008
        Albany, Georgia 31702-2008
        229-436-1545 Telephone
        229-436-6358 Facsimile
        asheppard@watsonspence.com
        lhatcher@watsonspence.com