IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

```
ANGELA RICE,                       *
                                   *
        Plaintiff,                 *
                                   *
    v.                             *    CV 117-039
                                   *
HARRY B. JAMES III,                *
Individually and in his Official   *
Capacity as Judge of Richmond      *
County Probate Court, and          *
AUGUSTA, GEORGIA,                  *
                                   *
        Defendants.                *
```

---

## O R D E R

---

Before the Court are Defendants' motions to dismiss Plaintiff's amended complaint. (Docs. 30, 35.) Plaintiff filed a response in opposition to both motions. (Docs. 33, 37.) Accordingly, Defendants' motions are fully briefed and ripe for review.

### I. BACKGROUND

This suit involves Plaintiff's termination from her employment with the Richmond County Probate Court. Plaintiff claims that her firing was due to her race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Fourteenth Amendment, under 42 U.S.C. § 1983.

Plaintiff began her tenure at the Richmond County Probate Court as an administrative assistant and eventually became Director of Probate Court. (Am. Compl., Doc. 23, ¶ 20.) On January 1, 2013, Defendant Judge Harry B. James III ("Judge James") was elected Chief Judge of the Richmond County Probate Court. (Id. ¶ 21.) Plaintiff claims that upon taking office, Judge James began a pattern of discrimination against his Caucasian employees. (Id. ¶ 33.)

Plaintiff asserts that Judge James restructured his office to "implement his strongly held racist beliefs," and Defendant Augusta, Georgia (the "City"), facilitated this process by approving Judge James' "Budget Transfer Request." (Id. ¶ 38, 40, 42.) Within five months of taking office, Judge James allegedly fired or forced two Caucasian employees to quit and subsequently filled both vacancies with African-American employees. (Id. ¶¶ 33-34.) On July 31, 2013, Judge James announced that the Director of Probate Court position would be eliminated and replaced by a "Chief Clerk." (Id. ¶ 46.) Judge James then selected Felecia Bray, an African-American employee who was allegedly less qualified than Plaintiff, to serve as Chief Clerk. (Id. ¶¶ 46, 51.) Consequently, Plaintiff was demoted to the level of administrative assistant. (Id. ¶ 47.) Judge James assured Plaintiff that her demotion was not due to

2

her work performance and that she had "nothing to fear." (Id. ¶ 55.)

Judge James also created the position of "Deputy Chief Clerk." (Id. ¶ 44.) On August 3, 2013, Plaintiff submitted an application to serve as Deputy Chief Clerk. (Id. ¶ 58.) However, Joy Daniels, an African-American employee with fewer years of experience than Plaintiff, was selected for the position. (Id. ¶ 62.) On August 22, after learning that she had been passed over for the Deputy Chief Clerk position, Plaintiff met with the director of the City's Equal Employment Office ("EEO") to complain about Judge James' discriminatory conduct.[1] (Id. ¶ 76.)

Plaintiff claims that Judge James learned about Plaintiff's EEO complaint on or before September 9, 2013, and subsequently began to engage in retaliatory conduct. (Id. ¶ 92.) Despite Judge James' initial insistence that Plaintiff's demotion was not due to her work performance, on September 23, Judge James told the City's Director of Human Resources that Plaintiff was demoted due to her "inability to supervise other staff." (Id. ¶ 101.) On another occasion, Judge James chastised Plaintiff for calling the I.T. Department, which presumably prevented Judge James from accessing the court's calendar. (Id. ¶ 96.) He told

---

[1] Although the Richmond County Probate Court and the City are separate entities, Judge James allegedly adopted the City's discrimination policy and agreed to be subject to its terms. (Id. ¶ 75.)

Plaintiff "'not to call the Information Technology Department, Human Resources, or anyone else again.'" (Id. ¶ 96.) When Plaintiff defended her actions, Judge James sarcastically responded "[y]eah, nothing makes me madder than to be accused of something not true." (Id. ¶ 100.)

Judge James also retaliated against Plaintiff by reducing her salary. Despite her demotion, Plaintiff did not see an immediate reduction in salary. (Id. ¶ 88.) After learning about Plaintiff's discrimination charge, however, Judge James asked the City to reduce Plaintiff's pay. (Id. ¶ 93.) On September 30, 2013, the City informed Plaintiff that her pay would be lowered by $15,000 per year. (Id. ¶ 105.) Furthermore, allegedly at the behest of Judge James, Plaintiff's salary reduction was retroactively applied to begin on September 12, 2013. (Id. ¶ 106.) Accordingly, the City deducted $1,153 from Plaintiff's next paycheck to offset the difference in salary. (Id. ¶ 105.)

On November 15, 2013, Plaintiff was called into Judge James' Office, where Ms. Bray and another African-American employee were present. (Id. ¶ 108.) Judge James scolded Plaintiff for not changing her voicemail to indicate that she was no longer Director of Probate Court. (Id.) In that vein, Judge James told Plaintiff "[o]h, you're going to be a Director alright . . . the Director of Traffic!" (Id. ¶ 109.)

4

On January 14, 2014, Judge James issued Plaintiff a written reprimand for not "being a team player," making improper gender references in court pleadings, and not having a "pleasant demeanor" in the workplace. (Id. ¶ 117.) The next day, during Plaintiff's annual review, Judge James allegedly told Plaintiff she should quit because no one liked her. (Id. ¶ 122.)

Plaintiff filed a Charge of Discrimination regarding Judge James' conduct with the Equal Employment Opportunity Commission on November 13, 2013. (Id. ¶ 83.) On March 4, 2014, during a staff meeting with Plaintiff in attendance, Judge James read aloud from Plaintiff's EEOC Charge in front of her colleagues. (Id. ¶ 124.) Judge James then pointed his finger at Plaintiff and said "I don't trust you!" and that "change was going to come real soon." (Id. ¶ 131, 133.) Judge James also announced that staff meetings would be suspended until his office became "more cohesive and trustworthy." (Id. ¶ 134.) After the meeting, Judge James called Lacey Grantham, the only other Caucasian employee at the Richmond County Probate Court, into his office. (Id. ¶ 135.) After speaking with Judge James, Ms. Gratham refused to have further communication with Plaintiff. (Id. ¶ 136.)

Plaintiff was terminated on March 17, 2014. (Id. ¶¶ 137, 138.) Plaintiff alleges that she had not engaged in or been punished for any misconduct beyond the written reprimand she

5

received in January. (Id. ¶ 140.) The City conducted Plaintiff's exit interview where she received her termination notice. (Id. ¶ 144.) Plaintiff's termination notice indicated that she was ineligible for rehire at any City department.[2] (Id.)

Plaintiff initiated this action on April 6, 2017. (Doc. 1.) Plaintiff alleges that Defendants engaged in intentional discrimination and retaliation, in violation of Title VII and § 1983. On October 5, 2017, the Court granted Plaintiff leave to amend her complaint over Judge James' objection.[3] (Doc. 22.) Defendants now move to dismiss Plaintiff's amended complaint.

## II. LEGAL STANDARD

Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to contain "a short plain statement of the claim showing that the pleader is entitled to relief," which gives a defendant notice of the claim and its grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must include enough facts that demonstrate the plaintiff's right to relief is more than speculative, and those facts must state a plausible claim to relief. Id. at 570. While a complaint does not need to be

---

[2] Plaintiff's termination notice was later amended to reflect that she was eligible for rehire. (Am. Compl. ¶ 146.)
[3] Judge James moved to amend his response to Plaintiff's motion for leave to amend her complaint. (Doc. 20.) Because the Court has already granted Plaintiff leave to amend her complaint, Judge James' motion (doc. 20) is **DENIED AS MOOT**.

6

bursting with factual allegations, there must be something more than a bare bone recital of the elements of a cause of action. Id. at 555.

However, a complaint should not be denied "unless it appears beyond a doubt that the plaintiff can prove no set of circumstances that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Court must accept all factual allegations as true and construe them in the light most favorable to the plaintiff. Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009).

### III. DISCUSSION

As a preliminary matter, the City moves to dismiss Plaintiff's amended complaint for failing to comply with Federal Rules of Civil Procedure 8(a) and 10(b). Complaints that violate Rules 8(a) or 10(b) are "often disparagingly referred to as shotgun pleadings." Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1320 (11th Cir. 2015). Dismissal under either rule is only appropriate where "it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." Id. (emphasis in original) (internal quotations omitted). The Eleventh Circuit has identified four types of shotgun pleadings: (1) "a complaint containing multiple counts where each count adopts the

7

allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"; (2) "a complaint . . . replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint that fails to "separate[e] into a different count each cause of action or claim for relief"; and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Id. at 1321-23. "The unifying characteristic of all types of shotgun pleadings is that they fail . . . to give the defendants adequate notice of the claims against them." Id.

Plaintiff's amended complaint seems to fit under the first category of shotgun pleadings. Every count in the amended complaint adopts the allegations of the preceding counts. (See Am. Compl. ¶¶ 162, 197, 231, 244.) Yet Plaintiff provides a detailed factual basis for her claims and this is not a case where "failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count." See Weiland, 792 F.3d at 1324. Moreover, the City's contention that it cannot understand the factual basis of Plaintiff's

claims is belied by the accurate recitation of those facts in the City's motion to dismiss. (Doc. 30, at 4-5.) Because it is not "virtually impossible" to know which allegations support which claim for relief, dismissal under Rules 8(a) or 10(b) is not appropriate.

A. "Employer" Under Title VII

Both the City and Judge James move to dismiss Plaintiff's Title VII claims. The City argues that it was not Plaintiff's employer and therefore cannot be held liable under Title VII. Judge James similarly claims that he is not an employer under Title VII because the Richmond County Probate Court had fewer than fifteen employees. Plaintiff responds that the City and Judge James should be treated as single or joint employers for Title VII purposes.

Title VII defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . ." 42 U.S.C. § 20002e(b). Although a plaintiff must show that the defendant had more than fifteen employees, the term "employer" should be construed liberally. McKenzie v. Davenport-Harris Funeral Home, 834 F.2d 930, 933 (11th Cir. 1984). Consistent with that construction, the Eleventh Circuit has instructed courts to "look beyond the nominal independence of an entity and ask

9

whether two or more ostensibly separate entities should be treated as a single, integrated enterprise when determining whether a plaintiff's 'employer' comes within the coverage of Title VII." Lyes v. City of Riviera Beach, Fla., 166 F.3d 1332, 1340-41 (11th Cir. 1999). The Eleventh Circuit has identified three situations where it is appropriate to aggregate different entities and treat them as a single employer for the purposes of Title VII: (1) the single employer - where the two entities are highly integrated with respect to ownership and operations; (2) joint employers - where the two entities contract with each other and one entity has sufficient control over the terms and conditions of the other's employees; and (3) the agency test - where an employer delegates control over its employees to a third party. Id. at 1341.

Where two entities have been declared separate under state law, however, there is a presumption that the entities are separate for Title VII purposes. Id. at 1344. To overcome the presumption of separateness, a plaintiff must establish that the purpose of maintaining separateness is to elude Title VII, or identify other circumstances that clearly indicate that the entities are integrated. Id. at 1344-45. The latter method includes considering factors such as: the ability to hire,

transfer, promote, or fire; authority to establish schedules or assignments; and the obligation to pay. Id. at 1345.

Here, Plaintiff has pled sufficient facts to show that the City and Judge James should be treated as a single employer. Plaintiff claims that the City was involved in many of Judge James' employment decisions. (Am. Compl. ¶ 75, 101, 144, 146.) Additionally, Plaintiff claims that she was paid by the City and that Judge James needed the City's permission before changing Plaintiff's salary. (See Am. Compl. ¶¶ 94, 105.) While the Court recognizes that Plaintiff bears a heavy burden to prove that aggregation is appropriate, aggregation is a fact-specific inquiry that is often better left to summary judgment. See Williams v. Ga. Stevedore Ass'n, Inc., 2013 WL 1130741, at **5-6 (S.D. Ga. Mar. 18, 2013); Walker v. Sumter Cty. Comm'n, 2008 WL 11377746, at *14 (N.D. Ala. Oct. 2, 2008) (citing Mack v. Ala. Dept. of Human Resources, No. CIV.A.00-D-1435, Doc. 86, at 8 (M.D. Ala. Jul. 28, 2003)). Accordingly, Plaintiff has stated a claim against the City and Judge James under Title VII.

## B. Plaintiff's 42 U.S.C. § 1983 Claims

Both the City and Judge James also move to dismiss Plaintiff's § 1983 claims. Judge James argues that he is entitled to qualified immunity. The City, on the other hand, argues that it had no control over Judge James and therefore cannot be held liable for his conduct under § 1983.

### 1. *Judge James' Qualified Immunity*

Judge James argues that Plaintiff's § 1983 claim is barred by qualified immunity. Qualified immunity protects government officials from suit so long as their conduct does not violate clearly established statutory or constitutional rights. Morris v. Town of Lexington, 748 F.3d 1316, 1321 n.15 (11th Cir. 2014). To invoke the defense, the defendant must first establish that he was acting within his discretionary authority.[4] Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). The burden then shifts to the plaintiff who must show that qualified immunity is not appropriate. Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). To survive a motion to dismiss, a plaintiff must (1) allege facts that establish a constitutional violation and (2) demonstrate that the right violated was clearly established when the violation occurred. Id.

Plaintiff alleges that she was terminated from her job due to Judge James' racial animosity. The Eleventh Circuit has recognized that the right to be free from intentional racial discrimination extends to public employment. See Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1478-79 (11th Cir. 1991). Furthermore, that right was clearly established when Plaintiff was terminated. See, e.g., Boggle v. McClure, 332 F.3d 1347, 1355 (11th Cir. 2003); Yeldell v. Cooper Green Hosp., Inc., 956

---

[4] Plaintiff concedes that Judge James was acting within his discretionary authority.

F.2d 1056, 1064 (11th Cir. 1992); Brown, 923 F.2d at 1478-79. Taking the facts alleged by Plaintiff as true, the Court cannot conclude that Judge James is protected by qualified immunity.

### 2. *The City's Control Over Judge James*

The City argues that it had no control over Judge James and therefore cannot be held liable for his actions pursuant to § 1983. A local government cannot be liable under § 1983 on a respondeat superior theory. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). Instead, the plaintiff must establish that the constitutional deprivation she suffered resulted from an official policy, or an unofficial policy or custom shown through the repeated acts of a final policymaker. Id.

Plaintiff does not allege that Judge James was acting according to the City's official policy. Thus, Plaintiff must show the City "has a custom or practice of permitting [a constitutional violation] and that [the City's] custom or practice is the moving force [behind] the constitutional violation." Grech v. Clayton Cnty., 335 F.3d 1326, 1330 (11th Cir. 2003). This will in turn require showing that the City had authority over Judge James. Turquitt v. Jefferson Cnty., 137 F.3d 1285, 1292 (11th Cir. 1998). If, under Georgia law, the City had no control over Judge James' actions, the City cannot be held liable under § 1983. Id.

Here, Plaintiff claims that Judge James subjected himself to the City's authority by adopting its discrimination policy. Under Georgia law, however, the probate judge is an elected constitutional officer that is independent from a municipality. GA. CONST. ART. IX, § I, PARA. III. The power to remove or discipline a probate judge is within the purview of the Judicial Qualification Commission, not the local governing authority. GA. CONST. ART. VI, § I, PARA. VI. Additionally, Judge James could not give the City this power by contract because a probate judge is not the kind of entity that is allowed to execute an intergovernmental agreement. See GA. CONST. ART. IX, § III, PARA. I. Accordingly, the City had no control over Judge James and therefore cannot be held liable for his actions under § 1983.[5]

## IV. CONCLUSION

Plaintiff's amended complaint complies with Federal Rules of Civil Procedure 8(a) and 10(b). Plaintiff has also alleged facts that support treating the City and Judge James as a single employer for Title VII purposes. Additionally, because Plaintiff's right to be free from intentional racial discrimination was clearly established when she was fired, the Court cannot conclude that Judge James is protected by qualified

---

[5] This finding does not contradict the Court's single employer analysis under Title VII. Unlike § 1983, Title VII allows courts to look beyond state law to determine whether the two entities act as a single employer. See Lyes, 166 F.3d at 1345. Accordingly, the City may be liable for Judge James' conduct under Title VII even if the City is not liable under § 1983.

immunity. Plaintiff's § 1983 claim against the City, however, must be dismissed because the City had no control over Judge James' conduct.

Upon due consideration, the City's motion to dismiss (doc. 30) is **GRANTED IN PART** and **DENIED IN PART**, and Judge James' motion to dismiss (doc. 35) is **DENIED**. The City's motion to dismiss is granted with respect to Plaintiff's § 1983 claim.

**ORDER ENTERED** at Augusta, Georgia this 10th day of May, 2018.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA